UNITED STATES of America,
Plaintiff-Appellee,

v.

Adam Alex LAWRANCE,
Defendant-Appellant.

No. 72-1607.

United States Court of Appeals,
Fifth Circuit.

June 25, 1973.

**689**

Stephen B. Murray, New Orleans, La. (Court-Appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Michael H. Ellis, Mary W. Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

██ This appeal presents an enduring question of evidence law—the admission of evidence of prior similar acts to show state of mind with regard to the crime charged—but in a context different from the usual. Lawrance was charged with selling heroin in violation of 26 U.S.C.A. §§ 4704(a) and 4705(a).[1] He pleaded insanity but the jury found him guilty. During the trial the government introduced over objection testimony concerning previous sales of heroin by Lawrance to a government informant, as relevant to the elements of knowledge, intent, and specific intent.

But those states of mind were not elements of the statutory crimes for which Lawrance was charged. The admission of this highly prejudicial but irrelevant evidence of extrinsic heroin transactions requires the conviction be reversed. While we reverse on this ground alone, we discuss—because of its importance in the event of retrial—the practice of mentioning the presumption of sanity in instructions to the jury.

The informant made the heroin purchase out of which this case arose on March 6, 1970. The indictments accused him of "knowingly, willfully, and feloniously" carrying out the prohibited acts. In his opening statement the prosecutor told the jury that the government must show that Lawrance did the prohibited acts "willfully, knowingly, and unlawfully." Then further into the prosecutor's statement the following colloquy occurred:

PROSECUTOR:

Now, in order to establish a common and lawful (sic) scheme or plan, or to show the requisite mental state of the mind of the defendant, the government will introduce—

DEFENSE COUNSEL:

I ask that we approach the bench. * * * [Unrecorded bench conference.]

COURT:

Let the record show that counsel for the defendant makes an objection to

1. 26 U.S.C.A. § 4704(a).
 "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."
 26 U.S.C.A. § 4705(a).
 "It shall be unlawful for any person to sell, barter, exchange, or give away

narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."
 These statutes were repealed by the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. § 801 et seq. (1972). The offense charged occurred prior to the effective date of the new act.

this coming opening argument, and the Court overrules the objection. . . .

PROSECUTOR:

. . . in order to show an unlawful plan or scheme in the mind of the defendant at the time of this sale, the government will offer evidence of other sales by the defendant to the confidential informant. . . .

The government's informant testified that he had purchased heroin from Lawrance on numerous occasions, and he gave particulars as to the time and manner of several of those transactions. Counsel for Lawrance objected to this testimony, but the court admitted it after instructing the jury to consider the evidence of similar prior acts only in "determining intent, motive, or guilty knowledge on the part of the defendant with regard to the crime charged in this particular indictment."[2] In its instructions given at the close of the evidence the District Judge, in effect, defined the crimes charged as including the elements of knowledge, intent and specific intent and instructed the jury to limit its consideration of the evidence of the prior heroin sales to those elements.

 The general rule bars the introduction of evidence of other criminal acts of the accused where the relevancy of such evidence depends on an inference from the other criminal acts to the character of the defendant and thence to the defendant's guilt. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). The purpose of the rule is to exclude "evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." C. McCormick, Evidence (2d), § 190 (1972). Evidence of similar criminal acts "will be received for the purpose of showing knowledge, intent, motive, design, or scheme where such element is an essential of the commission of the offense." Ehrlich v. United States, 238 F.2d 481, 484 (CA 5, 1956). Where intent is not an essential element of the offense charged, admission of evidence of similar offenses for the purpose of showing that element is reversible error. Hamilton v. United States, 409 F.2d 928 (CA 5, 1969) (sale of untaxed liquor, evidence of prior conviction for possession of tax paid liquor in dry county); Baker v. United States, 227 F.2d 376 (CA 5, 1955) (Possession of untaxed liquor, evidence of prior violations of internal revenue liquor laws).[3]

2. It had become evident in the course of the trial that the transactions about which the informant testified did not comprise a design, scheme, or plan. They were not a series of events culminating in the act charged. The commission of the act itself was not in issue, therefore, any evidence of a design or plan to commit the act was irrelevant. II Wigmore on Evidence, §§ 237, 300.

3. See also Fallen v. United States, 220 F.2d 946 (CA5, 1955), where defendant Trice was charged with wilfully and knowingly receiving, concealing and disposing of automobiles travelling in interstate commerce, knowing them to have been stolen, and conspiring with others to do the same. There was testimony that Trice was involved in changing numbers on the stolen cars. The court admitted over objection testimony of Goldman, a federal prisoner, that on another and unrelated occasion Trice had changed the numbers on two other stolen cars. This court reversed, saying:

"We think that there could have been no real question of Trice's criminal motive if, in fact, he changed the numbers on the stolen automobiles. Proof of the commission of the act carried with it the evident implication of a criminal intent. In such instances, evidence of the perpetration of other like offenses is not needed to establish criminal motive or intent and is not admissible for such purpose. 20 Am. Jur., Evidence, Sec. 313, pp. 295, 296, Note 20. It is practically impossible for us to believe that the evidence was offered by the Government actually and in good faith to prove motive or

■ We conclude that knowledge and intent are not essential elements of violations of 26 U.S.C.A. §§ 4704(a) and 4705(a). In United States v. Pittman, 439 F.2d 906, 908 (CA 5, 1971), though on a point not essential to our decision,, we expressed doubt that either knowledge or intent constituted elements of a violation of either of those statutes. The Supreme Court long ago[4] decided that § 4705(a) had no requirement of any culpable state of mind, either knowledge or intent, as an essential element of the offense. United States v. Balint, 258 U.S. 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922); United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). This court soon adopted that same view. Guilbeau v. United States, 288 F. 731 (CA 5, 1923). In Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 260, 96 L.Ed. 288, 299 (1952), the Supreme Court specifically approved the *Balint* and *Behrman* conclusion. United States v. Jones, 438 F.2d 461 (CA 7, 1971); Davis v. United States, 306 F.2d 317 (CA 8, 1962).

Although the constitutionality of § 4704(a) has been questioned, Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632 (1928); Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court has not addressed directly the question of whether knowledge and intent are essential elements of that offense. Several factors convince us that § 4704(a) does not require knowledge or intent. Both § 4704(a) and § 4705(a) originated in the same congressional act; the two sections contain similar language; neither section mentions any requirement of state of mind; and both purport to regulate, in an analogous manner, the same subject. See, United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); Morissette v. United States, 342 U.S. *supra* at 260–261, 72 S.Ct. 240, 96 L.Ed. 298 (1952); United States v. Dillard, 376 F.2d 365 (CA 7, 1967); United States v. Crawford, 438 F.2d 441 (CA 8, 1971). But see, Graham v. United States, 257 F.2d 724 (CA 6, 1958), and United States v. Chiarelli, 192 F.2d 528 (CA 7, 1951) (which indicate that unknowing possession may constitute a defense).

Since neither knowledge nor intent was an element of the offenses, no logical basis exists for requiring the higher and more precise standard of culpability embraced in specific intent. Nor is there any indication that Congress included specific intent as an element of § 4704(a) or § 4705(a). Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Hartzel v. United States, 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944); Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

■ Thus the District Court admitted the informant's testimony as relevant to matters which are not elements of the offenses charged. "The substantive evidentiary question here is one of relevancy . . . .,"[5] and the evidence was not relevant. Evidence of similar crimes—dubious at best—is prohibited without the saving grace of relevance to an element of the offense charged.[6]

---

intent. Trice had no notice of, nor opportunity to defend himself against, the criminal acts testified to by Goldman. As to Trice, Goldman's testimony was most harmful, and its admission must result in a reversal of his conviction." 220 F.2d at 948–949.

4. These sections originated in the Harrison Narcotic Act of 1914, 38 Stat. 785, 786.

5. United States v. Alston, 460 F.2d 48, 55 (CA5, 1972).

6. Relevance alone is not the key to this prosecutorial Pandora's box. If the evidence is relevant to an element of the offense which is in issue the trial court must then evaluate the evidence to determine whether it is "plain, clear, and conclusive" that the defendant did in fact commit the other crimes. United States v. Broadway, 477 F.2d 991 (CA5, 1973). Assuming the evidence of extrinsic crimes is convincing and relevant to a material fact in issue the trial court must then weigh the probative value of the evidence against its inherent preju-

The command of *Hamilton* and *Baker* that there be a reversal is not mitigated by the fact that the court submitted the case to the jury with instructions that the government had the burden of proving specific intent, a higher standard of proof than necessary. The admissibility of evidence of other criminal acts is the result of a process of weighing the obvious prejudice to the defendant against the probative value of the evidence with respect to the elements of the offense and concluding on balance that the interest of probative value must prevail. That equation collapses when the probative value interest is not real but spurious, relating not at all to the violations of law in issue and relevant only to elements that are not part of that violation. One can speculate that the harm to the defendant in reciting to the jury his other criminal acts which should not be mentioned in the case is in some immeasurable way overbalanced by erroneously requiring the jury to find specific intent, but it is pure speculation and not more than that.[7]

United States v. Alston, 460 F.2d 48 (CA 5, 1972), is not contrary to what we decide. Without discussing the essential elements of § 4704(a) or § 4705(a), we held in that case that evidence of similar criminal activity was admissible. But in *Alston* the evidence of other criminal acts was relevant to show a similarity of method, which in turn tended to prove identity. Here no issue of similarity of method or identity was raised and the District Court limited the evidence to show state of mind.

██ Because of the possibility of a retrial we discuss the appropriate instruction to the jury regarding the presumption of sanity. In a criminal trial, once the defendant produces some evidence of insanity the presumption of sanity "vanishes" and the prosecution must prove sanity beyond a reasonable doubt. Blake v. United States, 407 F.2d 908 (CA 5, 1969); Gordon v. United States, 438 F.2d 858 (CA 5, 1971); Mims v. United States, 375 F.2d 135 (CA 5, 1967). The presumption of sanity has been described as "a rule stating that the defendant has the burden of producing evidence of his insanity at the time of the offense." C. McCormick, Evidence (2d) § 346 (1972). The presumption of sanity is not an intangible bit of substantive evidence inuring to the prosecution's benefit but is "simply a convenient aid to rational determination . . ., based on the common experience of mankind that the overwhelming majority of us, regardless of our differences, quirks, and peculiarities, are of sufficient mental responsibility that we meet tests of criminal responsibility

---

dicial effect. On those scales the court must also weigh the need for such probative evidence, i. e., if the prosecution has a strong case without the evidence of similar criminal acts then there is no need for the probative value of the evidence and it should be excluded. See discussion of United States v. Fallen, footnote 3, *supra*, and C. McCormick, Evidence (2d) § 190 (1972); for a similar analysis within the context of state law see, Comment, The Admissibility of Other Crimes in Texas, 50 Texas L.Rev. 1409 (1972). This weighing process is within the discretion of the trial judge, but the question of what constitutes essential elements of an offense is one of law for the appellate court.

Arguably the prior criminal acts would have been admissible on the issue of whether Lawrance, who had a long history of schizophrenia characterized by periods of remission and exacerbation, was insane at the time of the sale in question. The issue before us is the admissibility of the evidence for the purpose for which offered and admitted, and we express no view on admission for purposes of showing a state of remission at the time of the offense charged, other than to say that if the prior transactions are relevant at all the prejudice inherent in bringing out that they were heroin purchase transactions, as opposed to transactions which shed light on remission versus exacerbation, can be strained out by the trial judge.

7. We reject the dictum to the contrary, stated as a conclusion and without analysis or supporting reasons, in United States v. Crawford, 438 F.2d 441 (CA8, 1971).

. . . [and] not to be deified into something else by formalistic application to a situation totally foreign to its purpose." Hackworth v. United States, 380 F.2d 19, 21 (CA5, 1967).

In United States v. Skinner, 437 F.2d 164 (CA5, 1971) we said that "the presumption of sanity has no effect after some evidence is introduced to rebut the presumption." We concluded that the District Court had committed an obvious and substantial error in instructing the jury that "[w]here the defense is insanity there is a presumption in favor of sanity", and we reversed under the plain error doctrine. The effect of that instruction was to charge the jury that "the presumption of sanity would continue to apply after evidence had been introduced which would overcome the presumption." 437 F.2d at 166–67. In United States v. Harper, 450 F.2d 1032 (CA5, 1971), and United States v. Hereden, 464 F.2d 611 (CA5, 1972), without mentioning *Skinner*, we concluded that instructions to the jury which mentioned the presumption of sanity in an explanation of the government's burden of proof did not constitute reversible error. The distinguishing features of these latter cases are that the instructions taken as a whole were not as onerous or prejudicial as the instructions in *Skinner* and merely mentioning the presumption did not have the effect of instructing the jury to consider the presumption as something of evidentiary value.

 Although the instruction in this case [8] is similar to that in *Harper* and *Hereden,* we cannot ascertain with certainty whether the effect of these instructions was to charge the jury to consider the presumption as evidence or whether the court merely "mentioned" the "presumption". Therefore, as a prophylactic measure, we conclude that on retrial, if any, the District Court should refrain from mentioning the presump-

tion of sanity in its instructions to the jury. Our conclusion that this is the better practice is based on the purpose of the "presumption", which is only to place upon the defendant the burden of going forward with some evidence of insanity (which has been accomplished by the time the jury is instructed) and the danger that the jury will be confused or led to believe that the "presumption" is of some evidentiary value in their considerations.

Reversed and remanded.

---

8. "The law, of course, presumes that a defendant is sane, but this presumption is rebuttable, and when a defendant introduces any evidence that he had a mental disease or defect at the time of the commission of the crime charged, then the government must establish beyond a reasonable doubt that the defendant was legally sane at the time of the commission of the crime."