**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Wray CROCKETT, Jr., Edward
Wray Crockett, III, Pleasant Henry
Partin, Marcus Randolph Martin, and
Edwin Eugene Brown, Defendants-Appellants.**

No. 73–4011.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1975.
Rehearing Denied March 4, 1975.

Herbert Shafer, Atlanta, Ga., James K. O'Malley, Pittsburgh, Pa., for defendants-appellants.

William J. Schloth, U. S. Atty., O. Hale Almand, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

Appellants, among others, were indicted in May, 1973, for violations of 18 U.S.C. § 1955, for operating an illegal gambling business, and of 18 U.S.C. § 371, for conspiracy to violate 18 U.S.C. § 1955. In a jury trial, appellants Edward Crockett, Jr., and Pleasant Partin were found guilty on both counts; appellants Edward Crockett, III, Marcus Martin, and Edwin Brown were found guilty of the substantive offense, but acquitted of conspiracy. The government's theory of the case was that an illegal gambling business had been conducted at the Valdosta, Georgia, Chapter of the Fraternal Order of the Eagles, that Crockett, Jr., had been a principal, that Crockett, III, and Partin had been managers, and that Partin, Martin, and Brown had been dealers and had otherwise assisted in the business.

Appellants' most compelling argument is that they were denied a fair trial when one of the defense counsel was called as a government witness and invoked the Fifth Amendment in response to a question. This awkward situation resulted from defense attorney H. B. Edwards, Jr.'s close association with the Valdosta chapter of the Eagles. A co-founder of the group in 1963, Edwards subsequently had served at different times as state trustee, state vice-president, state president, southeastern president, local president and local secretary. He resigned from this last office approximately two months before defendants were indicted. As a result of his experience, he knew a great deal about the operational structure of the local chapter; some testimony on this subject was essential to the government's case because of its need to prove who had authorized and supervised the gambling operation. He was therefore subpoenaed approximately two weeks before trial. Neither he nor any other defense counsel attempted to quash this subpoena or moved for a continuance. Neither was there any objection when he took the stand at trial.

Several of Edwards' answers indicated that he assumed it to be common knowledge that gambling had in fact gone on at the club. For example, when he was asked, "What about the gambling?" he replied, "I didn't have anything to do with the gambling." Again, no defense attorney objected at this time. Nevertheless, when Edwards was asked, "When did you first see card games of poker and blackjack and dice games out at the Eagles Club in Valdosta, Georgia?" his law partner, co-counsel and son, H. B. Edwards, III, objected that, "that is getting into attorney-client privilege." This objection was disallowed, and appellants do not challenge the correctness of the ruling on appeal. When the question was repeated. Edwards, Jr., replied, "I wish to take the Fifth Amendment. Any evidence I give might incriminate me in some regard." After a conference at the bench, however, he decided, "I will answer the question [sic] as long as they don't involve me in gambling because I wouldn't want to self-incriminate myself." He then stated that gambling had been going on at the club since its formation in 1963.

As a general rule, a party's attorney should not be called as a witness unless his testimony is both necessary and unobtainable from other sources.

United States v. Fiorillo, 376 F.2d 180, 185 (2nd Cir. 1967), Gajewski v. United States, 321 F.2d 261, 268–269, n. 9 (8th Cir. 1963), cert. denied, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). See United States v. Alu, 246 F.2d 29, 33 (2d Cir. 1957). We feel, however, that the facts of the instant case justified the prosecution in calling Mr. Edwards, Jr. His testimony was clearly necessary to the government's case; in order to prove that defendants had "conduct[ed], finance[d], manage[d], supervise[d], direct[ed], or own[ed], all or part of an illegal gambling business . . .", 18 U.S.C. § 1955, the prosecution needed to show who had been in positions of authority at the Eagles Club during the time when the gambling had occurred. The record does not indicate, nor do appellants claim, that Edwards' testimony was available from any other individual; certainly his experience made him the most likely choice.

■ Moreover, appellants have made no showing that they were prejudiced either by Edwards' short-lived claim of the Fifth Amendment privilege or by his subsequent testimony. His fear of self-incrimination bore on whether he had been involved in the gambling, not on whether defendants had been. His subsequent testimony did not incriminate any defendant, and appellants do not so contend. Finally, there was overwhelming and undisputed evidence that an illegal gambling operation was going on at the club. A federal agent testified as to his personal participation in several games of chance and his observation of others on nine separate occasions. Seven other witnesses also testified that they had either observed or participated in various games on at least one occasion. In short, if the court erred in letting Edwards take the stand, even absent any defense objection, it was beyond question harmless error.

■ Nevertheless, we feel compelled to comment on the conspicuous impropriety of Edwards Jr.'s failure to withdraw from the case when he realized that he was to be a prosecution witness. We are convinced that appellants were not prejudiced by his conduct, but we do not doubt they felt ill-served. As in all areas of legal practice, appearance can be as damaging as reality, and here the appearance of impropriety is overwhelming.

Second, appellants argue the court's instruction to the jury on count two directed a "partial verdict of guilty." In order to be convicted under 18 U.S.C. § 1955, a defendant must be found to have "conduct[ed], finance[d]," etc., a "gambling business" which "is a violation of the law of a State or political subdivision in which it is conducted." Thus, in order to violate federal law, one must first be guilty of violating state or local law. Appellants contention is based on the district judge's failure to read or paraphrase to the jury the pertinent Georgia Code sections making it illegal to conduct a gambling business in the state. Rather, he instructed them that, "I am just going to tell you, as a matter of law, that the operation of a commercial gambling establishment is in violation of Georgia law." Although this instruction, standing alone, might have given the jury the erroneous impression that the issue of state law violation was foreclosed from their consideration, the judge corrected any possible misunderstanding immediately by adding:

> [T]he prosecution . . . ha[s] to prove that it is a violation of the law of the state. Well, I have already charged you that the law of the state of Georgia prohibits commercial gambling enterprises. Now, second, *I expressed no opinion about this one way or the other because you are the sole judges of the facts. I am telling you what the law is but you are the sole judges of the facts.* (Emphasis supplied.)

Clearly, then, the judge did not remove from the jury its prerogative to find the facts; he merely told them that if they found the facts to be as the government contended, then defendants would, as a matter of law, have violated Georgia law. Appellants do not, as indeed they cannot, dispute this.

■ Since the court did not remove the fact question from the jury, appellants' only contention must be that the jury needed to hear the precise wording of the statute rather than simply that a "commercial gambling business" was a violation of state law. We find no merit in this contention; a trial court is not required to define terms which are reasonably within the common understanding of a juror. Bohn v. United States, 260 F.2d 773, 779 (8th Cir. 1958), cert. denied, 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959) (court not required to define "a person engaged in the business of accepting wagers," "placing bets on both sides of a transaction," or "bookmaker"). We believe "commercial gambling," as used in the Georgia statute,[1] is a phrase of common understanding. The same is true for "gambling"[2] and "keeping a gambling place."[3] The trial court was therefore not required to elaborate on the state law element of the offense, either by reading or paraphrasing the statutory definitions. Finally, we note that defense counsel did not request such elaboration at trial; under Rule 52(b), Federal Rules of Criminal Procedure, any error complained of at this stage must be "plain error." Clearly, even if the court's instructions could have been more thorough, they did not constitute plain error.

■ Third, appellants contend they were denied their right to effective cross examination because they were not allowed to ask two prosecution witnesses where they were living at the time of trial. They apparently wished to elicit the information that the witnesses were in the custody of the government. Generally, Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) require the admission of background information, such as a witness' address, which is essential to identify the witness with his environment, "to place the witness in his proper setting and put the weight of his testimony and his credibility to a test . . . . " Alford, supra 282 U.S. at 692, 51 S.Ct. at 219. This court examined this rationale in United States v. Alston, 460 F.2d 48 (5th Cir. 1972), and concluded that no hard and fast rule had been established; we held the case in which a witness might be in physical danger to be an exception to the preference for disclosure. That is precisely our situation here. After the court sustained the government's objection to the first question, a bench conference, outside the presence of the jury, revealed that the government had strong reason to believe the witness' life was in danger, and that she was under the protection of a United States Marshal. The same was true for the second witness.

Finally, appellants, demonstrate no prejudice to have resulted from the court's ruling. Defendants succeeded quite ably in identifying the witnesses with their environment. The first witness testified on cross examination as to her place of birth and prior residences, her marital status and "affair" with appellant Crockett, Jr., her place of resi-

1. "A person commits commercial gambling when he intentionally does any of the following acts:

(a) Operates or participates in the earnings of a gambling place  . . .." Ga.Code Ann. § 26–2703(a).

2. "A person commits gambling when he: (a) makes a bet upon the partial or final result of any game or contest or upon the performance of any participant in such game or contest; or (b) makes a bet upon the result of any political nomination, appointment, or election or upon the degree of success of any nominee, appointee, or candidate; or (c) plays and bets for money or other thing of value at any game played with cards, dice or balls. A person convicted of gambling shall be punished as for a misdemeanor." Ga.Code Ann. § 26–2702.

3. "A person who knowingly permits any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control to be used as a gambling place, or who rents or lets any such property with a view or expectation that it be so used, commits keeping a gambling place. A person convicted of keeping a gambling place shall be punished as for a misdemeanor of a high and aggravated nature." Ga.Code Ann. § 26–2704.

dence and employment in Valdosta, and payments made to her by the government. The second witness testified as to her previous place of residence in Valdosta, and was cross examined on her enrollment in and departure from Valdosta State College and her plans to enroll in a nursing school in Miami. We conclude, therefore, that this case falls squarely within the *Alston* exception to the disclosure preference; the court did not err in sustaining the government's objection.

We have examined the other issues raised by appellants and find them to be completely without merit. The opinion of the district court is therefore

Affirmed.