**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Wray CROCKETT, Jr., David
Keen Crockett, and Jewell L. Futch,
Defendants-Appellants.**

No. 73–4013.

United States Court of Appeals,
Fifth Circuit.

June 5, 1975.

Rehearing Denied July 25, 1975.

Floyd Buford, Macon, Ga., for Jewell L. Futch.

Herbert Shafer, Atlanta, Ga., James K. O'Malley, Pittsburgh, Pa., for E. W. Crockett, Jr., and David K. Crockett.

William J. Schloth, U. S. Atty., O. Hale Almand, Jr., Asst. U. S. Atty., Macon, Ga., for the U. S.

Before GOLDBERG and RONEY, Circuit Judges, and GROOMS, District Judge.

RONEY, Circuit Judge:

This case involves a different phase of the same gambling conspiracy with which we dealt in United States v. Crockett, 506 F.2d 759 (5th Cir. 1975), petition for cert. filed, 43 U.S.L.W. 3540 (U.S. April 8, 1975) (# 74–1252). That case involved the operation of an illegal gambling business at the Valdosta, Georgia, Chapter of the Fraternal Order of the Eagles, in which defendant Edward Wray Crockett, Jr. had been a principal. This case involves the operation of another gambling enterprise in which Edward Wray Crockett, Jr. was an active participant, the Valdosta Amusement Company (the Company).

Edward Wray Crockett, Jr. and his son, David Keen Crockett, were indicted in July 1973, for violations of 18 U.S.C.A. § 1955, for operating an illegal gambling business, and of 18 U.S.C.A. § 371, for conspiracy to violate § 1955. In addition, the father was indicted along with Jewell L. Futch, sheriff of Lowndes County, Georgia, for conspiring to obstruct the enforcement of the gambling laws of the State of Georgia with the intent to facilitate an illegal gambling business, in violation of 18 U.S.C.A. § 1511. After a jury trial, Edward Wray Crockett, Jr. was found guilty on all three counts and given three concurrent sentences of five years. David Keen Crockett was acquitted on the § 371 conspiracy charge but convicted on the § 1955 substantive violation and sentenced to three years probation and fined $3000. Sheriff Futch was convicted of conspiring to obstruct the enforcement of the gambling laws and sentenced to five years.

On this appeal the defendants raise a total of nine issues for review, challenging: (1) the constitutionality of the federal statutes and the applicability of the statutes to the intrastate activities of the defendants in this case; (2) the denial of a motion to sever based on the indictment's alleged charge of unrelated conspiracies; (3) the admissibility of evidence of alleged misconduct not charged in the indictment; (4) the trial court's instruction to the jury on the Georgia gambling laws, as amounting to a partial directed guilty verdict; (5) the trial court's "all or nothing" charge, which required that the jury either convict both defendants or acquit both defendants of the obstructing justice conspiracy; (6) the sufficiency of proof of an essential element of a § 1955 substantive offense, i. e., proof that the gambling operation involved more than five persons; (7) the sufficiency of evidence in support of the sheriff's conviction for conspiring to obstruct the enforcement of the Georgia gambling laws; (8) the denial of a motion for a new trial predicated on the statutory disqualification of one juror who was a convicted felon; and (9) the permissibility of convictions for both conspiracy and the substantive § 1955 crime under Wharton's Rule. Finding that none of these issues warrant reversal or the granting of a new trial, we affirm as to all defendants.

As proof of the crimes charged against all defendants, the Government introduced a great deal of evidence concerning the gambling operation of the Valdosta Amusement Company, an enterprise operated by Edward Wray Crockett, Jr. Specifically, the Government demonstrated that the Company carried on its business by placing various mechanical gambling devices in numerous locations in Lowndes and other south Georgia counties. Employees of the Company, including David Crockett, would go to the various establishments in which the devices were located and would collect from them, i. e., "rob" the money which had been deposited by the users of the machines. Then, after dividing the "take" between the particular establishment and the Company according to a prearranged formula, the Valdosta Amusement Company employee making the collection, the "route man,"

would deliver the money to the Company's secretary and bookkeeper.

When the Company employee "robbed" the machines, the various establishments would be given a receipt indicating the amount collected and their proportionate share thereof. The receipt would also show the amount taken out for federal gambling machine licenses and state sales taxes. The evidence demonstrated, however, that at a number of establishments in Lowndes County only, an additional $20.00 deduction was "cut off the top" from the total taken from the machine. No record was made of this deduction by either the Company employee or the establishment at which the machine was located. Thus, as to each establishment where this procedure was followed, the records of both the Valdosta Amusement Company and the establishment would consistently reflect collections in the amount of $20.00 less than what was taken from the machines. The sum of the several $20.00 collections was placed in envelopes and put in a cigar box in a cabinet in Edward Wray Crockett's office.

Testimony by various witnesses indicated that the amount of money thus clandestinely collected was to go to "the man." Defendants attempted to show that "the man" was the elder Crockett. The Government's theory of the case, apparently accepted by the jury, was that "the man" was Sheriff Futch and that the $20.00 "off the top" was intended for, and did go to Sheriff Futch for "protection" of the operations of the Valdosta Amusement Company and the Eagles Club, the phase of the gambling enterprise involved in the earlier *Crockett* case.

### MISCELLANEOUS POINTS FOR REVIEW

Several of the issues raised on appeal can be disposed of in summary fashion, as they have already been decided adversely to defendants by prior decisions of this Court or the Supreme Court.

The constitutionality of § 1955 and its applicability to a factual situation not unlike the case *sub judice* was upheld in United States v. Harris, 460 F.2d 1041 (5th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972). Since the identical definition of "illegal gambling business" found in § 1955 (prohibition of illegal gambling business) is the key to conviction under § 1511 (obstruction of state or local law enforcement), the challenge to the constitutionality and applicability of § 1511 is likewise foreclosed by clear Circuit precedent. *Accord,* United States v. Riehl, 460 F.2d 454 (3rd Cir. 1972).

The argument that the defendants should have been granted a new trial because of the statutory disqualification of one of the jurors has been rejected by this Court in Ford v. United States, 201 F.2d 300 (5th Cir. 1953), where we held that such motion could only succeed upon a showing of actual bias or prejudice. *Accord,* United States v. Silverman, 449 F.2d 1341, 1344 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); Gomez v. United States, 245 F.2d 344 (5th Cir.), cert. denied, 355 U.S. 863, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957). Here as in *Ford* and the other cases cited, there has been no showing of actual prejudice or bias. Moreover, defendant Futch's argument that this case is distinguishable from the *Ford* line of decisions, because he was denied access to the list of prospective jurors, is also foreclosed by Circuit precedent to the contrary. "Defendants are not, as a matter of right, entitled to receive the list of jurors prior to the day of trial. The time at which defendants may be given a jury list is left to the sound discretion of the trial court." Spivey v. United States, 109 F.2d 181, 185 (5th Cir.), cert. denied, 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401 (1940). Bound by the *Ford-Spivey* line of cases, we find no error in the trial court's denial of the motion for a new trial.

The contention that a partial verdict of guilty was in effect directed when the trial court failed to read or paraphrase to the jury the text of the applicable Georgia gambling laws has

recently been considered and rejected by this Court in the earlier *Crockett* case. 506 F.2d at 761–762.

■ Finally, the United States Supreme Court has recently held that Wharton's Rule does not preclude convictions for both a § 1955 substantive offense and a § 371 conspiracy to violate § 1955. Iannelli v. United States, —— U.S. ——, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). We had previously made the same decision in United States v. Pacheco, 489 F.2d 554 (5th Cir. 1974), cert. denied, —— U.S. ——, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975).

The remaining issues raised by the defendants require a fuller discussion.

## THE DENIAL OF THE SEVERANCE MOTION

Sheriff Futch was charged in only one of the three counts of the indictment. Counts one and two did not name Futch but charged only the two Crocketts with operation of an illegal gambling business prohibited by 18 U.S.C.A. § 1955, and with conspiracy to commit that substantive offense. Futch and Edward Wray Crockett, Jr. were charged in the third count with a conspiracy to obstruct the Georgia laws against gambling in violation of 18 U.S.C.A. § 1511. The Government's trial theory had the Crocketts operating the gambling business, through the Valdosta Amusement Company, and Futch, in his capacity as county sheriff, protecting that business. Thus, the offenses charged in the indictment were all related to the gambling activities of the Valdosta Amusement Company.

■ Under F.R.Crim.P. 8(b) multiple defendants may be joined in a single indictment where they are alleged to have participated in "the same act or transaction" or "the same series of acts or transactions." Futch was properly joined in the same indictment with the Crocketts under "the same series of acts or transactions" provision of Rule 8(b).

■ Futch contends, however, that the trial court should have severed for separate trial the count against him and the elder Crockett under F.R.Crim.P. 14.

It is within the sound discretion of the trial judge whether a F.R.Crim.P. 14 severance should be granted. United States v. Wayman, 510 F.2d 1020, 1024 (5th Cir. 1975). The decision to sever is based on the likelihood of prejudice in a joint trial. The trial court's denial of a severance will not be reversed except where there is an abuse of discretion. United States v. Hamilton, 492 F.2d 1110, 1112 (5th Cir. 1974). The appellant has a heavy burden in demonstrating prejudice when a severance is not granted, United States v. Wayman, *supra,* and the ruling of the trial court will rarely be disturbed on review. United States v. Laca, 499 F.2d 922, 926 (5th Cir. 1974).

Sheriff Futch challenges the denial of his motion for severance on the grounds that his trial was prejudiced by the admission of evidence relating to the first two counts which (1) had no bearing on his guilt and (2) was inadmissible hearsay testimony as to him. Specifically, Futch argues that the charge of multiple conspiracies in the indictment could easily have caused the jury to confuse the evidence of the § 1955 substantive crime and conspiracy with that concerning the § 1511 conspiracy.

■ Futch was charged in the indictment with conspiring to obstruct the enforcement of the Georgia gambling laws with the intent to facilitate an illegal gambling business. Almost any evidence admitted under the first two counts to prove the operation of an illegal gambling business would be relevant and probative under the § 1511 count to prove the existence of the illegal gambling business Futch was charged with protecting. We reject Futch's argument that since as sheriff of Lowndes County he could only obstruct laws in that county, the admission of testimony regarding the operation of the Valdosta Amusement Company in counties other than Lowndes was prejudicial to his case. His protection of the Company, which was headquartered in Lowndes County, had a definite impact on the gambling operations in other south Georgia counties in which the Company operated. There is no basis, therefore, for his claim of prej-

udice in the Government's setting forth the entire scope of the Valdosta Amusement Company's operations.

The trial court clearly instructed the jury on the Government's burden of proof and the elements of each count. Under these circumstances, there is little danger of the jury's transferring guilt from one conspiracy and its defendants to a separate conspiracy with different defendants and then finding all the defendants guilty of an "overall conspiracy." This distinguishes this case from those relied upon by defendant. *See, e. g.,* Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. Varelli, 407 F.2d 735 (7th Cir. 1969). Unlike the situations in those cases, the defendants were not charged in one conspiracy count with what proved to be separate conspiracies. Rather, here they were charged in different counts of the same indictment with separate conspiracies. The joinder of the counts, then, did not give rise to prejudice requiring severance under F.R. Crim.P. 14.

 We have examined the instances of testimony which Futch alleges were inadmissible hearsay as to him and which he claims constituted grounds for reversal. Even if we were to conclude that error was committed in the admission of any of the testimony, we do not find that these isolated instances demonstrate an abuse of discretion on the trial judge's part in denying the motion for severance. In a seven day trial involving over fifty Government witnesses and producing hundreds of pages of testimony, we view such possible error as *de minimis* and not amounting to the type of prejudice which required the trial judge to exercise his discretion in granting a severance.

 Furthermore, the admission of the testimony without limiting instructions was not reversible error which would require that Futch be granted a new trial. In each instance the testimony was properly admissible, either because it was not hearsay or because it fell within the recognized exception for declarations of a co-conspirator made during the course of a conspiracy and in furtherance of it. For example, in perhaps the most questionable instance, the testimony of Penny Fennell that Crockett, during the course of the conspiracy, referred to Sheriff Futch as "his man" and told her "that he [Futch] would take care of him," was admissible because Crockett was then acting in the interest of the conspiracy by allaying Ms. Fennell's fears of being caught participating in gambling activities. *Cf.* United States v. James, 510 F.2d 546, 549 (5th Cir. 1975). No error was committed by the admission of Fennell's testimony, or that of witnesses Cochran and Porter, which was also challenged as being inadmissible hearsay.

## THE ADMISSIBILITY OF EVIDENCE OF MISCONDUCT NOT CHARGED IN THE INDICTMENT

Sheriff Futch challenges the admissibility into evidence of testimony of five Government witnesses on the grounds that their testimony was evidence of alleged acts of misconduct or crimes by him which were not charged in the indictment. Such testimony, he claims, was both irrelevant and prejudicial to his trial on the particular acts charged in the indictment.

 As a general rule, evidence of other crimes or acts of misconduct of the accused may not be introduced where the relevancy of such evidence serves solely to show the defendant's bad character or criminal propensities. Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948); United States v. Lawrance, 480 F.2d 688, 690 (5th Cir. 1973). This general rule is subject to certain recognized exceptions where the evidence of the other acts tends to prove some element of the crime presently charged and therefore is not offered to show the defendant's bad character. United States v. Pittman, 439 F.2d 906, 908 (5th Cir.), cert. denied, 404 U.S. 842, 92 S.Ct. 138, 30 L.Ed.2d 77 (1971); 2 C. Wright, Federal Practice & Procedure: Criminal § 410 (1969). Thus,

evidence of other acts of misconduct or crimes is regarded as admissible for the purpose of showing knowledge, intent, motive, design, scheme, or the. like, where such is an essential element of the commission of the offense. United States v. Goldsmith, 483 F.2d 441, 443 (5th Cir. 1973); Ehrlich v. United States, 238 F.2d 481, 483 (5th Cir. 1956).

 Once the trial court decides that evidence of extrinsic acts is relevant to a material fact in issue, it must then weigh the probative value of the evidence against its inherent improper prejudicial effects. United States v. Goldsmith, *supra* ; United States v. Lawrance, *supra* . An important consideration in this balancing process is whether the other acts are closely connected in time and nature to the offense charged. The decision on the admissibility of this kind of evidence is a matter in which the trial court should be allowed a wide range of discretion, but, of course, that discretion is not without limit. *See* United States v. Boyd, 446 F.2d 1267, 1270 (5th Cir. 1971).

With this black-letter law as a starting point for analysis, we turn to an examination of the challenged testimony given by each of the Government witnesses.

 1. *Testimony of Doris Herron* —This witness had worked for Sheriff Futch as a maid six or seven years previous to the time of trial. She testified that during the course of her employment she observed cases of meat and whiskey delivered to Futch's residence. She further testified that the defendant once told her that he could purchase these items cheaper than could the Eagles Club and that "he had a partnership in the Eagles Club."

There is nothing unlawful or even improper in the bare acts testified to by Ms. Herron. What the testimony does evidence is a relationship between Sheriff Futch and the Eagles Club, and hence a relationship between Futch and Edward Wray Crockett, Jr., the operator of the club. This was relevant to the indictment's charge that Futch and Crockett had an understanding that the sher-

iff would not enforce the criminal laws of the state of Georgia with respect to gambling at the Eagles Club.

 The fact that the incidents related by Ms. Herron were committed prior to the time period charged in the indictment is not dispositive. Evidence of behavior antedating the period covered by the indictment is generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior. United States v. Nakaladski, 481 F.2d 289, 296 (5th Cir.), cert. denied, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973); United States v. Fino, 478 F.2d 35, 38 (2nd Cir. 1973), cert. denied, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974). Evidence of acts performed prior to the adoption of the criminal statute involved is likewise admissible. United States v. Ferrara, 458 F.2d 868, 874 (2nd Cir.), cert. denied, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972).

2. *Testimony of Dominick DeCarlo and Jack Johnson*—Mr. DeCarlo was manager of the Elks Club during the period of time covered by the indictment, a period in which the Elks Club owned its own gambling machines. He testified that during the course of his employment he received a telephone call from Sheriff Futch warning him of an impending raid by the Georgia Bureau of Investigation.

Mr. Johnson was the manager of the V.F.W. Club in Valdosta, which had conducted gambling games for a number of years. He testified that while he occupied this position, the post commander of the club, Mike Carsello, collected from him money which was derived from the profits of the gambling and which he was told was "for the man downtown." He further testified that later, after Carsello had withdrawn from association with the V.F.W., he [Johnson] delivered money derived from the gambling profits to Futch and also to a man named Wilson who was collecting it "for the man downtown." The hearsay testimony as to Carsello's and Wilson's statements was admitted into evidence, after

the jury had been instructed as to its limited use, for the purpose only of explaining Mr. Johnson's later actions in delivering money to Futch.

The evidence of Futch's call to the Elks Club and of Johnson's delivery of money to Sheriff Futch is relevant to the charge of conspiracy to obstruct the Georgia gambling laws. Even if the testimony is viewed as not covered by the indictment's charge it would still be admissible under the "similar acts" doctrine previously discussed, for the purpose of showing design, plan, scheme, and *modus operandi*. United States v. Nakaladski, *supra*; United States v. Payne, 467 F.2d 828, 831 (5th Cir. 1972), cert. denied, 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275 (1973). The testimony helped to emphasize precisely how the conduct charged in the indictment fit within the general framework of Sheriff Futch's enforcement of the Georgia gambling laws. DeCarlo's testimony presents a concrete example of the sheriff's obstruction of the gambling laws as to a club similar to that operated by defendant Crockett. Johnson's testimony concerned payments which were made to secure protection of an illegal gambling operation of the same nature and type as that carried on by defendant Crockett. The conspiracy between Futch and Crockett cannot be viewed in a vacuum. The above testimony shed light on the totality of circumstances and conditions existing in Lowndes County where Futch was sheriff.

3. *Testimony of Harold Hedges* —This witness testified that one evening in 1969 he was present at the Eagles Club and observed Edward Wray Crockett, Jr. give to Sheriff Futch a "sheaf of bills" wrapped in a rubber band. As we said previously, evidence of behavior antedating the period covered by the indictment or occurring prior to the enactment of the statute is generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later acts. United States v. Nakaladski, *supra*; United States v. Fino, *supra*; United States v. Ferrara,

*supra*. The indictment charged that Futch, in return for monetary payments, would protect the gambling operations conducted at the Eagles Club. Hedges' testimony was admissible as establishing the existence of the charged conspiracy in 1969, and helps to illustrate the relationship between Futch and Crockett and the manner in which the actors carried out their conspiratorial conduct.

4. *Testimony of Jack Clouston*—Mr. Clouston, who operated an establishment called the Tiki Lounge, testified as to payments he made to Sheriff Futch to protect the illegal sale of alcoholic beverages and the operation of the lounge beyond the legal hours. Even though his testimony related to matters other than the illegal gambling conspiracy, its admission was within the discretion of the trial judge. Similar acts proved to show intent, scheme, plan, etc., do not have to be identical to the acts charged. Weiss v. United States, 122 F.2d 675, 689 (5th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941); Tedesco v. United States, 118 F.2d 737, 740–741 (9th Cir. 1941). As we said in *Weiss*, "it has always been deemed allowable to introduce evidence of others acts and doings of the party of a kindred character in order to illustrate or establish his intent or motive in the particular act directly in judgment." 122 F.2d at 684. Evidence of payoffs to secure protection of a lounge selling alcoholic beverages illegally is of a "kindred character" to the nature of the act charged in the indictment, *i. e.*, the acceptance of monetary payments to allow an illegal activity to go unprosecuted.

We find no abuse of discretion in the trial court's rulings as to the admissibility of evidence.

### THE PROPRIETY OF THE "ALL OR NOTHING" CHARGE

In his charge to the jury the trial judge, in advising how the verdict slips were to be completed, gave the following instruction with regard to the § 1511 count of the indictment:

Now, this one word of explanation or direction, because of the language of

the federal statute which is the basis of the prosecution of count three, that is the count in which Mr. Edward Wray Crockett, Jr. and Sheriff Futch are jointly indicted. *If you find either Sheriff Futch or Mr. Crockett not guilty on that count it will be necessary for you to find the other one not guilty. In other words, before you can find Sheriff Futch guilty it would be necessary for you to find Mr. Crockett guilty on that count. Before you can find Mr. Crockett guilty on that count it would be necessary for you to find Sheriff Futch also guilty on that count. You either find them both guilty on count three or you find them both not guilty on count three.* Now, that is not true with regard to count one and count two. There are two people indicted in count one and you can find either both of them guilty or both of them not guilty or one guilty and one not guilty. The same way with count two. You can find both defendants who are charged there guilty or you can find both not guilty or you could find one of them guilty and the other one not guilty. But on count three, you have got to find both defendants guilty or you have got to find both defendants not guilty because of the language of the federal statute which is the basis of the prosecution. (Emphasis added).

Both defendants Edward Wray Crockett, Jr. and Sheriff Futch claim that this instruction constituted reversible error in that it denied them the personal consideration of the charges against each defendant that the Sixth Amendment guarantees. *See* United States v. Kelly, 349 F.2d 720, 757 (2nd Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

 To constitute a violation of 18 U.S.C.A. § 1511, the conspiracy must involve at least one government official and at least one person involved in an illegal gambling business. The only evidence implicating a government official in a § 1511 violation concerned Sheriff Futch. Therefore, for a conviction to be

valid as to any of the other parties conspiring to violate the statute, Futch would, of necessity, have had to be a party to the conspiracy. Thus, the charge as given was not harmful to defendant Futch.

 Crockett's counsel did not object to the instruction or request that it be corrected. In his closing argument to the jury, he even argued in accordance with the charge which was given. Thus, to be reversible, any error in the charge would have to amount to "plain error." F.R.Crim.P. 52(b); United States v. Jacquillon, 469 F.2d 380 (5th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973). Since defendant Crockett is serving concurrent five year sentences on the three counts against him, however, and the alleged error relates only to the one § 1511 count, the error is regarded as harmless and nonreviewable under the concurrent sentence doctrine. *See, e. g.,* United States v. Stone, 472 F.2d 909, 916 (5th Cir. 1973); United States v. Easterly, 444 F.2d 1236, 1240 (5th Cir. 1971); C. Wright, Federal Practice & Procedure: Criminal § 527 (1969).

## THE SUFFICIENCY OF PROOF THAT THE GAMBLING OPERATION INVOLVED MORE THAN FIVE PERSONS

 One of the essential elements of a § 1955 offense is the requirement that the illegal gambling business be one which "involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." 18 U.S.C.A. § 1955(b)(1)(ii). The two Crocketts contend that the gambling business conducted under the auspices of the Valdosta Amusement Company did not meet this requirement because at no time were there five employees of the Company. The fallacy in this argument is the failure to differentiate between the number of persons employed by the Valdosta Amusement Company and the number of persons who conducted, financed, managed, supervised, or directed

the gambling business in conjunction with the Company.

The gambling business involved many establishments other than just the Valdosta Amusement Company office. It involved at least one person in each of the numerous establishments throughout southern Georgia where the gambling machines were physically located. The Company operated by forming a series of partnerships with the owners or operators of the various other establishments, the proceeds from the gambling devices being divided between a particular establishment and the Company according to a prearranged formula. The contention that the Valdosta Amusement Company at all times employed less than five persons is thus irrelevant. The Crocketts' further argument that customers may not be included to meet the required number might be valid if the customers were the gamblers at the machines, but where the customers are in effect partners with the Company in the operation of the gambling business, they are well within the proscription of the statute.

SUFFICIENCY OF THE EVIDENCE IN SUPPORT OF FUTCH'S § 1511 CONVICTION

Defendant Futch moved for a judgment of acquittal after the Government's case and at the close of all evidence. The primary basis for the motion was the alleged failure of the Government to prove that Futch was a member of the conspiracy, as opposed to showing merely that Futch knew and associated with the elder Crockett. Futch reasserts this argument on appeal.

 On appeal from a conviction we must view the evidence in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). So viewed, the evidence is clearly sufficient for a jury reasonably to conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt.

*See* Lopez v. United States, 414 F.2d 909 (5th Cir. 1969).

The convictions of all three defendants are

Affirmed.