E. Norman ANDERSON, Lyle Olson, Bernice Olson and The Back Forty, Inc., a Washington corporation, Plaintiffs,

v.

George JANOVICH, Sheriff of Pierce County, Washington, et al., Defendants.

Melvin R. JOURNEY, Phyllis Journey, on her own behalf and as guardian ad litem for Ami A. Journey, a minor, Plaintiffs,

v.

George R. JANOVICH Sheriff of Pierce County, Washington, et al., Defendants.

Nos. C79, 283TR, C79–284TR.

United States District Court, W. D. Washington.

April 20, 1982.

Joe R. McCray, San Francisco, Carl D. Teitge, Tacoma, Wash., for plaintiffs.

Ramon M. Escure, Tacoma, Wash., for defendant John J. Carbone.

Petrich, Hester & Robson, by Monte E. Hester, Tacoma, Wash., for defendant Janovich.

Robert S. Bryan, Seattle, Wash., for defendant Mazzuca.

Kempton, Savage & Gossard by Anthony Savage, Seattle, Wash., for defendant Ronald Williams.

John S. Abolofia, Tacoma, Wash., for defendant Susan Williams.

Lawrence M. Ross, Tacoma, Wash., for defendant Joseph M. Carbone.

Bradford M. Gierke, Burgess, Kennedy & Fitzer by John Kennedy, Tacoma, Wash., for defendant Pierce County.

## MEMORANDUM AND ORDER

ROTHSTEIN, District Judge.

This matter comes before the court on plaintiffs' motion for partial summary judgment on the issue of certain defendants' liability under 18 U.S.C. § 1964(c) and 42 U.S.C. § 1983 (1976). Plaintiffs are E. Norman Anderson, The Back Forty, Inc., Melvin R. Journey, and Phyllis Journey, on her own behalf and as guardian ad litem for Ami Journey. Defendants in this motion are John Joseph Carbone, George V. Janovich, Richard Francis Caliguri, Frank Julius Mazzuca, Lamont Arnold Zemek, Ronald John Williams, and Joseph M. Carbone.

On February 27, 1979 a superseding indictment was returned against the defendants charging them and several others with various racketeering offenses. After a jury trial, judgments of conviction were entered on July 17, 1979. Each of the defendants was convicted under Count I of the indictment, which charged a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). The conspiracy sought to control the tavern business in Pierce County, Washington, through a pattern of racketeering activity consisting of acts and threats of murder, arson and bribery, gambling, mail fraud, extortion and obstructing justice. The targets of the conspiracy included the Back Forty Tavern and its manager and owners, plaintiffs Anderson and Olson, and plaintiff Melvin Journey, a Washington State Liquor Control Board officer. The defendants were also found guilty as charged under many of the other counts.[1] Their convictions were affirmed. *United States v. Carbone*, No. CR78-97T (W.D.Wash.1979), *aff'd sub nom. United States v. Zemek*, 634 F.2d 1159 (9th Cir. 1980), *cert. denied*, 450 U.S. 916, 985, 101 S.Ct. 1359, 1525, 67 L.Ed.2d 341, 821 (1981).

Plaintiffs brought this action to recover damages allegedly caused by defendants' criminal conduct. The instant motion directly raises the question to what extent the judgments of conviction may be given collateral estoppel effect in this action. Defendants argue that plaintiffs are not entitled to judgment as a matter of law because collateral estoppel is not available to a private plaintiff suing under 18 U.S.C. § 1964(c), and because, even if available in connection with claims under 18 U.S.C. § 1964(c) and 42 U.S.C. § 1983, use of collateral estoppel in this case would be unfair.[2]

---

1. The defendants were convicted of the following offenses:

 John Joseph Carbone: Count I (18 U.S.C. § 1962(d)); Count II (*id.* § 1962(c)); Counts III, IV, V, VI (*id.* §§ 1951, 2); Counts VII, VIII (*id.* §§ 1510, 2); Counts IX, X (*id.* §§ 1955, 2); Count XI (*id.* § 1511); Counts XV, XVI, XVII (*id.* §§ 1341, 2).

 George V. Janovich: Count I (18 U.S.C. § 1962(d)); Count XI (*id.* § 1511).

 Richard Francis Caliguri: Count I (18 U.S.C. § 1962(d)); Count VI (*id.* §§ 1951, 2); Counts XV, XVI, XVII (*id.* §§ 1341, 2).

 Frank Julius Mazzuca: Count I (18 U.S.C. § 1962(d)); Counts IX, X (*id.* §§ 1955, 2); Count XI (*id.* § 1511).

 Lamont Arnold Zemek: Count I (18 U.S.C. § 1962(d)); Count VI (*id.* §§ 1951, 2); Count VII (*id.* §§ 1510, 2).

 Ronald John Williams: Count I (18 U.S.C. § 1962(d)); Count II (*id.* § 1962(c)); Counts III, IV, V, VI (*id.* §§ 1951, 2); Counts VII, VIII (*id.* §§ 1510, 2); Counts IX, X (*id.*

 §§ 1955, 2); Count XI (*id.* § 1511); Counts XIII, XIV (*id.* §§ 1341, 2).

 Joseph M. Carbone: Count I (18 U.S.C. § 1962(d)); Count VI (*id.* §§ 1951, 2); Counts XV, XVI, XVII (*id.* §§ 1341, 2).

2. Defendant Pierce County also argues that plaintiffs' response to the County's earlier motion to dismiss should prevent plaintiffs from seeking summary judgment. Plaintiffs' opposition argued that plaintiffs' allegations were legally sufficient and that dismissal would have to come, if at all, only after evidence had been offered. In light of the difference in function between a motion to dismiss and a motion for summary judgment, *see* 6 Moore's Federal Practice ¶ 56.02[3], at 56–28 to 56–30 (2d ed. 1981), the court has trouble seeing any inconsistency in plaintiffs' positions. However, the court's ruling that defendants are not estopped to deny liability under 42 U.S.C. § 1983, *see* Section III *infra*, makes a decision on defendant's argument unnecessary.

Title IX of the Organized Crime Control Act of 1970 (Act), Pub.L.No. 91–452, 84 Stat. 941, 18 U.S.C. § 1962(c), makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

In addition to criminal penalties imposed for violations of section 1962, civil remedies are available. The government may seek dissolution, divestment, and injunctions, and private plaintiffs may obtain damages. 18 U.S.C. § 1964. The private damages provision permitting plaintiffs to recover "threefold the damages" they sustain is patterned after antitrust laws, S.Rep.No. 617, 91st Cong., 1st Sess. 81 (1969), and is silent concerning the availability of collateral estoppel. 18 U.S.C. § 1964(c). The following subsection provides for collateral estoppel in civil suits "brought by the United States." *Id.* § 1964(d). Finally, section 904 of the Act, which is not codified, provides a rule of construction and a savings clause for existing criminal and civil remedies.

*I. Collateral Estoppel Is Available In a Suit By a Private Plaintiff Under Section 901(a) of the Organized Crime Control Act of 1970, 18 U.S.C. § 1964(c)*

 Pointing to the disparity between subsections (c) and (d) of section 1964, defendants argue that Congress clearly knew how to provide for collateral estoppel and deliberately chose not to so provide in suits by private plaintiffs. Defendants conclude that collateral estoppel is simply not available in suits by private plaintiffs under section 1964(c).[3] Section 901(a) of the Act, 18 U.S.C. § 1964(c), provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Section 904(b) of the Act augments section 901(a) by providing that "Nothing in this title shall supercede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title."[4] Collateral estoppel is without doubt a civil remedy of historical standing. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–28, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979); *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 (1951) ("well established"); *Irving Nat'l Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.). Therefore section 1964(c), although it does not expressly provide for collateral estoppel, cannot be read to limit the availability of that remedy to private plaintiffs. To do so would be to create a conflict between section 1964(c) and section 904(b), both of which are part of title IX of the Act. The court cannot ascribe that intent to Congress.[5] *Rockbridge v. Lincoln*, 449 F.2d 567,

---

**3.** Defendant John Joseph Carbone concedes that the common law of collateral estoppel applies.

**4.** Defendants' *expressio unius* argument is therefore of no moment. 2A Sands, Sutherland on Statutory Construction §§ 47.23, .25, at 123, 132 (4th ed. 1973).

**5.** The legislative history of the Act, although inconclusive, does not negate the court's interpretation. Title IX of the Act, entitled Racketeer Influenced and Corrupt Organizations (RICO), which constitutes Chapter 96 of Title 18 of the United States Code, derives from S. 1861 (introduced April 18, 1969, 115 Cong.Rec. 9568). S.Rep.No.617, *supra*, at 83. S. 1861

provided for civil actions by the government, but not by private plaintiffs, and contained a collateral estoppel provision precluding relitigation by convicted criminal defendants of essential allegations in such later civil actions by the government. 115 Cong.Rec. at 9569. S. 30, the bill that was ultimately enacted as the Organized Crime Control Act of 1970, originally lacked a title dealing with racketeer influenced and corrupt organizations. See *id.* at 827 (S. 30 introduced). When the RICO title was added, it was identical to S. 1861 in providing for civil actions by the government only, and collateral estoppel in those actions based on prior convictions secured by the government. *See id.* at 39,906 (S. 30 reported).

571 (9th Cir. 1971). Moreover, the abrogation of a traditional remedy such as collateral estoppel requires a clearer expression than mere silence.

■ Likewise, the fact that section 5 of the Clayton Act, 15 U.S.C. § 16, makes any civil or criminal antitrust judgment rendered in favor of the United States prima facie evidence against the losing defendant in subsequent actions by any party, together with the fact that RICO's civil remedies are patterned after the antitrust laws,[6] does not indicate that Congress wished to deny private plaintiffs the benefits of collateral estoppel. The interpretation of one statute by reference to an analogous but unrelated statute is an unreliable means of discerning legislative intent. 2A Sands, Sutherland on Statutory Construction, *supra*, § 53.05, at 349. Rather, it is reasonable to conclude that the insertion of section 904 was intended to afford private plaintiffs all existing remedies in addition to treble damages, and to make clear to federal and state governments that RICO does not preempt other criminal provisions.

■ The purpose and policy of RICO favor a liberal construction of sections 901(a) and 904(b). Congress stated that the Act's purpose is "to seek the eradication of organized crime in the United States ... by providing enhanced sanctions and new remedies ...." Pub.L.No. 91–452, 84 Stat. 922 (1970). And the usual rule that penal statutes be narrowly construed was specifically overridden by the Act's command that the provisions of RICO be "liberally construed to effectuate [those] remedial purposes." *Id.* § 904(a). The Supreme Court relied in part on section 904(a) in holding that RICO "enterprises" include both legitimate and illegitimate enterprises. *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981). *See generally* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restrictions*, 95 Harv. L.Rev. 1101, 1102 (1982). It is inconceivable to this court that, in light of these strong admonitions, Congress intended to deprive private plaintiffs of the use of a procedural remedy of historical standing. On the contrary, it is evident that the specific remedies provided were not to supersede "any provision" of existing remedial law. § 904(b).

## II. Defendants are Estopped To Deny That They Violated Section 1962 of Title 18, United States Code

■■ Having determined that collateral estoppel is not unavailable to private suitors

Representative Steiger offered an amendment to S. 30 that provided for private treble damage actions and extensive civil remedies obtainable by the government. 116 Cong.Rec. 35,227 28 (1970). The amendment also contained a provision to the effect that criminal judgments in favor of the United States under RICO would estop convicted defendants in subsequent civil actions instituted by any party, not just the United States. The amendment was withdrawn when Representative Poff indicated that the House Judiciary Committee had the matter of private remedies under consideration. *Id.* at 35,295, 35,346-47.

S. 30 was modified by the committee and reoffered with a treble damage provision for private plaintiffs and with civil remedies patterned after antitrust remedies running in favor of the government. *Id.* at 35,364. The collateral estoppel provision was unchanged from the original S. 30. However, a new section 904 had been added, saving statutory and common law remedies and penalties in addition to those expressly provided. S. 30 passed as reoffered.

That the collateral estoppel provision for civil actions by the government went unchanged is not the kind of deliberate legislative act from which a clear inference may be drawn. If any conclusion is warranted, it is that Congress thought it a wise precaution to "provide[ ] specifically" for collateral estoppel in civil actions by the government since substantially increased, powerful civil remedies running only in favor of the government had been added to the Act. H.Rep.No.1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4034. *See* 18 U.S.C. § 1964(a) (divestiture, restrictions on future activities or investments, dissolution or reorganization of enterprises); *id.* § 1966 (expedition of civil actions brought by United States); *id.* § 1967 (closure of civil actions brought by United States).

**6.** *See, e.g.*, S.Rep.No.617, *supra*, at 81; Hearings on Organized Crime Control Before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess. (1970), at 85 (statement of Sen. McClellan); *id.* at 170 (Department of Justice comments); *id.* at 327 (New York Bar Association report).

under 18 U.S.C. § 1964(c), the court must decide whether it is properly employed in this case. The doctrine of collateral estoppel provides that a judgment in a prior suit precludes relitigation in a subsequent action of issues actually litigated and necessary to the outcome of the first action. 1B Moore's Federal Practice ¶ 0.441[2], at 3777 (2d ed. 1980); *Parklane Hosiery Co. v. Shore, supra*, 439 U.S. at 326 n.5, 99 S.Ct. at 649 n.5. In order to use such a judgment offensively, however, the party in whose favor it will operate must have been unable practically to join the prior action, and the use of the judgment must not be unfair to his opponent. *Id.* at 331, 99 S.Ct. at 651–52. The Court in *Parklane* considered three factors to determine whether the offensive use of collateral estoppel would be unfair to the defendant. First, it analyzed the defendant's incentive to litigate vigorously in the prior action. Second, it determined whether the judgment relied on was inconsistent with any prior judgment or judgments. Third, it focused on the difference in procedural opportunities between the prior action and the case at bar, asking whether the difference, if any, "could readily cause a different result." *Id.*

In this case, the plaintiffs were unable to join the prior criminal action instituted by the United States. The defendants had an extremely high incentive to litigate vigorously in the prior action since they faced long prison terms if convicted. The criminal convictions of defendants are not alleged to be inconsistent with any prior judgments. Focusing on the third prong of the Court's unfairness analysis, however, defendants argue that new procedural opportunities are available in the instant action: they can examine witnesses by taking depositions, they can utilize cross-claims, counterclaims and impleader, they can use civil discovery devices generally, such as requests for production and admissions, they can call other defendants to testify, and they can testify themselves. The court examines each contention in turn.

■ Rule 15 of the Federal Rules of Criminal Procedure provides for the taking of depositions in criminal cases. Although a showing of "exceptional circumstances" is required, there is no indication by defendants that they even attempted to take depositions in the criminal action. When procedures are available in a prior proceeding that a defendant fails to use or attempt to use, courts will not recognize a procedural disparity between the two actions based on such procedures. *E.g., United States v. Karlen*, 645 F.2d 635, 639 (8th Cir. 1981); *Maidman v. O'Brien*, 473 F.Supp. 25, 33 (S.D.N.Y.1979).

With respect to defendants' assertions that crossclaims, counterclaims and impleader claims can be used in this action, the court agrees. However, none of the defendants have used or attempted to use those procedures. Similarly, since defendants have not attempted to show how the use of requests for production, admissions and other discovery devices might cause a different result in this case, their argument lacks force. In essence, defendants are arguing that the inherent differences between criminal procedure and civil procedure prevent the fair use of collateral estoppel in a civil case following a criminal conviction. That argument has been implicitly yet forcefully rejected over the years. *See Emich Motors Corp. v. General Motors Corp., supra*, 340 U.S. at 568, 71 S.Ct. at 413–14; *Local 167, Int'l Brotherhood of Teamsters v. United States*, 291 U.S. 293, 298, 54 S.Ct. 396, 398, 78 L.Ed. 804 (1934); *Frank v. Mangum*, 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969 (1915); *United States v. Fabric Garment Co.*, 366 F.2d 530, 534 (2d Cir. 1966); *Considine v. United States*, 645 F.2d 925, 929 (Ct.Cl. 1981).

■ Defendants assert that their ability to call codefendants to testify in this case is a significant procedural opportunity that was not available in the prior criminal action. The court does not agree that collateral estoppel is therefore precluded. First, defendants have done no more than to assert the general availability of codefendant testimony. They have not even stated that they in fact intend to call codefendants to

testify, and they have in no way indicated how such testimony would negate liability. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Comm. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). Once plaintiffs satisfied their initial burden of showing the absence of a genuine and material issue of fact, the burden shifted to defendants "to come forward with specific facts showing that there remains a genuine factual issue for trial. Fed.R.Civ.P. 56(e) . . . ." *SEC v. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980) (citations omitted). The defendants must present those facts "in evidentiary form; [they] cannot rest on [their] pleadings." *Id.* Defendants' unsupported assertion is insufficient to forestall summary judgment.

Second, defendants J. J. Carbone, Janovich, Caliguri, Mazzuca, and Zemek sought severances in the criminal action on the grounds that the testimony of codefendants would be exculpatory. The trial judge denied severances as to each defendant. *United States v. Carbone*, No. CR78–97T (W.D.Wash. Mar. 5, 1979) (order denying defendants' motions for severance). Applying the tests enunciated in *United States v. Kaplan*, 554 F.2d 958, 966 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977), and *United States v. Bridgeman*, 523 F.2d 1099, 1107–08 (D.C.Cir. 1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976), the judge found that joinder was not prejudicial because the anticipated testimony would not be exculpatory. The court of appeals upheld the ruling. 634 F.2d at 1181.

 If codefendant testimony was insufficiency exculpatory to require severance under Fed.R.Crim.P. 14, the court can-

not see that such testimony is likely to cause a different result here. That is not to say that, where severance is denied in a prior criminal action in which codefendant testimony is offered, collateral estoppel automatically follows in a subsequent civil action where such testimony is offered.[7] However, in this case the argument that codefendant testimony will negate liability must be deemed foreclosed by Judge Sharp's denial of defendants' motions for severance. It is clear that the judge focused on the likelihood that the testimony of codefendants would be exculpatory to each defendant. Exculpation in a criminal action depends only upon the existence of a reasonable doubt. Judge Sharp's ruling can be fairly read as indicating that the testimony proffered by defendants would not create a reasonable doubt in the mind of a juror. Here, no specific testimony has even been offered. Since plaintiffs' burden in this case requires only that they prove liability by a preponderance of the evidence, *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1280 (D.Del.1978), the tendency of the proffered testimony to negate liability would have to be substantial—it would have to be sufficient reasonably to support the conclusion that plaintiffs' allegations are at least as likely not true as true. Defendants' showing is totally inadequate.

 Defendants also maintain that their ability to take the stand themselves in this action makes collateral estoppel inappropriate. It is of course true, however, that the opportunity to testify was available in the criminal action. Defendants did not avail themselves of that opportunity, although surely the incentive to be acquitted in the criminal trial was at least as great as the

---

7. Rule 14 motions require a weighing of numerous factors which do not bear directly on whether the testimony might cause a different result. *See United States v. Kaplan, supra*, 554 F.2d at 966. In addition, both Rule 14 motions and requests that a party be collaterally estopped from litigating particular issues require the exercise of the trial judge's discretion.

*United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980) (Rule 14); Advisory Committee Note on Federal Rule of Criminal Procedure 14; *Parklane Hosiery Co. v. Shore, supra*, 439 U.S. at 331, 99 S.Ct. at 651–52 (collateral estoppel).

incentive to avoid liability here.[8] And again, defendants neither assert that they intend to testify nor that their testimony will negate liability. The mere speculative possibility that one of the defendants might want to take the stand in this case does not require that he be given the opportunity to do so. *See* Fed.R.Civ.P. 56(e); *SEC v. Murphy, supra.* Moreover, it seems evident that the absence of an opportunity to testify in this action to facts found in the criminal action cannot be prejudicial to defendants. The incentive to litigate in the criminal action, plus the identity of issues between that case and this, confirms the conclusion that defendants' interest in having a second chance to disprove matters found by a jury beyond a reasonable doubt is far outweighed by the interests of justice in the economical use of judicial resources and the avoidance of needless burdens on innocent people injured by criminal violations.

■ To recover under 18 U.S.C. § 1964(c), plaintiffs must establish the following elements: (1) injury to their business or property, (2) by reason of, (3) a violation of section 1962. The judgments of conviction in *United States v. Carbone, supra,* preclude relitigation of the issue whether a violation of section 1962 occurred. However, since injury and causation were not actually litigated and necessary to the convictions, defendants cannot be estopped from litigating those matters here. The parameters of the section 1962 violations—the way those violations will be described to the jury—will be discussed in Section IV of this Memorandum.

### III. Defendants Are Not Estopped To Deny Liability Under 42 U.S.C. § 1983

■ The theory upon which plaintiffs base their section 1983 claim is that George Janovich, as Sheriff of Pierce County, acted under color of law to deprive plaintiffs of federally protected rights, and that the other defendants acted in concert with Janovich. Private persons who jointly engage with state officials in conduct that violates section 1983 act "under color" of law for purposes of section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27–28 & n.4, 101 S.Ct. 183, 186 & n.4, 66 L.Ed.2d 185 (1980) (quoting *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) in n.4). Plaintiffs' section 1983 claim against all defendants thus depends upon whether defendant Janovich acted "under color" of law to deprive plaintiffs of rights guaranteed by federal law. *Gregory v. Thompson,* 500 F.2d 59, 61 (9th Cir. 1974).

■ The fundamental rule of collateral estoppel is that a judgment on the merits in a prior suit "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 326 n.5, 99 S.Ct. at 649 n.5. Defendant Janovich was convicted on Counts I and XI of the superseding indictment. Count I charged a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). Count XI charged a conspiracy to obstruct state law enforcement, in violation of 18 U.S.C. § 1511. Neither conviction required proof that Janovich acted "under color of any statute, ordinance, regulation, custom, or usage, of any State" or that he "deprived" any person of a federal right. Section 1962 does not even remotely contain any element which duplicates one of the elements of plaintiffs' section 1983 claim. Hence collateral estoppel on the section 1983 claim cannot be predicated on Janovich's conviction under Count I.

■ Plaintiffs argue, however, that Janovich's section 1511 conviction permits collateral estoppel on their section 1983 claim. A conviction for violating section 1511 requires a determination that a member of the conspiracy to obstruct state law enforcement "is an official or an employee" of the state or its political subdivision. 18 U.S.C. § 1511(a)(2); *United States v. Cylkouski,* 556 F.2d 799, 803 (6th Cir. 1977);

---

**8.** Defendants have not argued that the Fifth Amendment does not permit the court to draw this inference.

*United States v. Crockett*, 514 F.2d 64, 74 (5th Cir. 1975). ˙Granting that 18 U.S.C. § 1511 is directed against illegal gambling businesses wherein state or local officials misuse their offices and so "make it possible for [such businesses] to function," H.Rep.No. 1549, *supra*, 1970 U.S.Code Cong. & Ad.News at 4029, not simply gambling operations that include a state official acting as a private individual, it does not follow that a state official's conviction under section 1511 proves that he acted "under color" of law for purposes of 42 U.S.C. § 1983.[9]

◼ Section 1511, regardless of the intent with which it was passed, only requires proof that a member of the conspiracy *is* a state official. *See United States v. Cylkouski, supra; United States v. Crockett, supra.* To find liability under section 1983 in this case, on the other hand, the factfinder must conclude that the conduct complained of had "the force of law by virtue of the persistent practices of state officials." *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 167, 90 S.Ct. at 1613; *see also* E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 92.08 (1977 & Supp. 1982). It is apparent that the conviction of defendant Janovich for violating section 1511 required no such conclusion. Furthermore, even if the conviction under section 1511 did establish that defendant acted under color of law, it would establish that fact only for purposes of the section 1511 violation, not the section 1962 violation. Yet it

is not defendants' conducting of an illegal gambling business, but their acts of arson and attempted murder, for which plaintiffs seek damages. Collateral estoppel on the issue of color of law in connection with the section 1511 violation therefore could not obviate the necessity for proof that defendants acted under color of law in connection with the acts of arson and attempted murder.

### IV. The Court Will Determine What Was Decided in *United States v. Carbone* In Accordance With the Rule of *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951)

◼ The problem of ascertaining for collateral estoppel purposes what was decided in a prior criminal action that resulted in a general verdict of guilty has been addressed by the Supreme Court. *Emich Motors Corp. v. General Motors Corp., supra.*[10] The court's task is to discover what was " 'distinctly put in issue and directly determined' in the criminal prosecution," *id.* at 569, 71 S.Ct. at 414 (citation omitted), and to instruct the jury as a matter of law on those issues. *Id.* at 571, 71 S.Ct. at 415.

The difficult problem, of course, is to determine what matters were adjudicated in the antecedent suit. A general verdict of the jury or judgment of the court without special findings does not indicate which of the means charged in the indictment were found to have been used in

---

9. 18 U.S.C. § 1511 was added to Title 18 by section 802 of the Organized Crime Control Act of 1970, Pub.L.No. 91–452, 84 Stat. 936 (1970). Section 801 contains a finding by Congress that "illegal gambling enterprises are facilitated by the corruption and bribery of State and local officials or employees responsible for the execution or enforcement of criminal laws." The House Report indicates that section 802 "is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern, and those corrupt State and local officials who make it possible for them to function." H.Rep. No.1549, *supra*, 1970 U.S.Code Cong. & Ad. News at 4029.

The Senate Report states that "[t]he inevitable companion of flourishing gambling activity

... is the bribery and corruption of local law enforcement officials." S.Rep.No.617, *supra*, at 71. The prohibition against illegal gambling enterprises was thus extended to "the attendant corruption of State law-enforcement officials." *Id.* at 73.

10. Defendants argue that *Emich Motors* is limited to civil actions brought under section 5 of the Clayton Act, 15 U.S.C. § 16. The court disagrees. The Court in *Emich Motors* read section 5 as incorporating the common law of estoppel, and said: "The evidentiary use which may be made under § 5 of the prior conviction of respondents is thus to be determined by reference to the general doctrine of estoppel." 340 U.S. at 568, 71 S.Ct. at 414.

effectuating the conspiracy. And since all of the acts charged need not be proved for conviction, [citation omitted], such a verdict does not establish that defendants used all of the means charged or any particular one. Under these circumstances *what was decided by the criminal judgment must be determined by the trial judge* hearing the treble-damage suit, upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts. [Citations omitted.] *Id.* at 569, 71 S.Ct. at 414 (emphasis added).

Accordingly, although the court has determined that defendants are estopped to deny that they violated 18 U.S.C. § 1962, it remains for the court to determine precisely what issues must be deemed precluded. The court has a duty to "make an order" specifying the facts which cannot be controverted in this action. Fed.R.Civ.P. 56(d); *Diamond Door Co. v. Lane-Stanton Lumber Co.,* 505 F.2d 1199, 1202 (9th Cir. 1974). Since plaintiffs have not submitted "[s]worn or certified copies" of the pleadings, transcript and instructions in *United States v. Carbone, supra,* however, Fed.R. Civ.P. 56(e), the court does not have the necessary resources with which to formulate such an order. *See Williams v. Liberty,* 461 F.2d 325, 327 (7th Cir. 1972); *United States v. Fabric Garment Co., supra,* 366 F.2d at 534.

The court therefore directs plaintiffs to formulate a proposed order specifying the facts which are precluded by virtue of defendants' convictions. The proposed order shall contain page references to the record, a sworn or certified copy of which should be attached. The order must be filed with the Clerk of the Court no later than thirty days from the date this order is signed, although the court would entertain a request for an extension of time should such prove necessary.

IT IS SO ORDERED.

The Clerk of the Court is directed to send uncertified copies of this Memorandum and Order to counsel of record.