FIREMAN'S FUND INSURANCE COMPANY; Allstate Ins. Co., Plaintiffs–Appellees,

Richard Banks, et al., Defendants,

v.

Lynn Boyd STITES, Defendant–Appellant.

No. 99–56622.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 2001

Filed Aug. 3, 2001

See also, 56 F.3d 1020.

Schoelch, Encino, California, for the defendant-appellant.

Ron H. Burnovski (Briefed), Robins, Kaplan, Miller & Ciresi, Los Angeles, California, for appellee Allstate Insurance Company.

Richard P. Edwards (Briefed), Mower, Koeller, Nebeker, Carlson & Haluck, San Diego, California, for appellee Fireman's Fund Insurance Company.

Curtis L. Metzgar (Briefed), Even, Crandall, Wade, Lowe & Gates, Rancho Cucamonga, California, for appellee State Farm Fire and Casualty Company.

Andrew G. Dulaney (Argued), Antioch, California, for the appellees.

Before: ALARCON, TROTT, and W. FLETCHER, Circuit Judges.

TROTT, Circuit Judge:

In this appeal, we must explain how the criminal and civil provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 ("RICO") interact, and decide under what circumstances a civil RICO plaintiff may collaterally estop a defendant from contesting the facts proven against him in a previous criminal trial. We conclude that under the specific facts of this case, an individual who has been convicted of criminal RICO violations may be held civilly liable for damages flowing from the fraudulent scheme he masterminded, even where some of those damages represent money extracted by co-defendants who were acquitted at their own criminal trials.

Lawrence F. Schoelch (Briefed and Argued), Law Offices of Lawrence F.

## BACKGROUND

The plaintiffs in this case are Allstate Insurance Company, Fireman's Fund Insurance Company, and State Farm Fire and Casualty Company (collectively "the Insurers"). Defendant Lynn Boyd Stites is a former attorney who has been convicted of a criminal RICO violation and numerous counts of mail fraud for his role in an organization that defrauded the plaintiffs and other insurance companies out of millions of dollars by controlling both sides of several major lawsuits in order to inflate legal fees. *See United States v. Stites,* 56 F.3d 1020, 1022 (9th Cir.1995) (affirming Stites's convictions). The Insurers sued Stites under 18 U.S.C. § 1964, RICO's provision for civil lawsuits.

Stites's scheme to "churn" litigation exploited California case law holding that insurance companies with a duty to defend their insureds must sometimes allow those insureds to select their own attorneys. *See, e.g., San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y Inc.,* 162 Cal. App.3d 358, 208 Cal.Rptr. 494 (1984). Stites controlled a network of lawyers that was able to infiltrate both sides of several major lawsuits. Lawyers who were members of this so-called "Alliance" would ensure that plaintiffs would not settle until late in the litigation, thus enabling defense lawyers to accumulate substantial attorneys' fees. Through this process, as well as through the use of kickbacks, Stites and other members of the Alliance extracted millions of dollars from the insurance companies who had to pay the defense bills and settlements. *See Stites,* 56 F.3d at 1022.

Although Stites and many members of his "Alliance" were convicted of RICO violations and various predicate acts of mail fraud, several lawyers were acquitted of all charges. Among those acquitted were Douglas Caiafa and George Dezes. Another alleged member of the Alliance, Alan Arnold, was indicted but died before his trial.

After Stites's criminal convictions became final, the Insurers sought summary judgment in their civil cases against him on the ground that Stites was collaterally estopped from challenging any issue regarding his involvement in the RICO scheme. The district court agreed, and granted partial summary judgment based on collateral estoppel. The court noted that, except as to the issues of causation and damages, the elements of criminal and civil RICO were the same, but held that the Insurers had submitted inadequate documentation of their damages. The Insurers then submitted a second summary judgment motion. The court determined that the Insurers had cured the problems with the documentation of their damages, and granted summary judgment for over twenty million dollars.

In his response to the Insurers' second summary judgment motion, Stites argued that he could not be held liable for the fees paid to attorneys who had not been convicted of RICO charges, because the Insurers had not proved that those attorneys were members of the Alliance. Because this response was filed late, the district judge initially refused to consider it. Four months after the judgment had been entered, however, the Insurers requested that the district court consider Stites's belated response. The district court did so, and modified the judgment under Rule 60(b) of the Federal Rules of Civil Procedure.

In granting partial relief from the judgment, the district court assumed that the Insurers could not recover fees paid to lawyers who were not members of the Alliance. The district court then subtracted from the judgment sums attributable to the fees of attorneys whom the Insurers had not proved were connected to the Alli-

ance. However, the court also concluded that the Insurers had submitted conclusive evidence linking the acquitted RICO defendants, Dezes and Caiafa, to the Alliance. The district judge then modified the judgment to reflect the reduced amount of damages. Stites appeals from that judgment.

## DISCUSSION

### A. Standard of Review

Although the order from which Stites appeals is an order modifying the judgment pursuant to Rule 60(b), in considering Stites's belated response to the Insurers' motion for summary judgment, the district judge considered afresh his earlier decision to grant summary judgment in favor of the Insurers. Therefore, our de novo standard of review for a district court's summary judgment decisions governs. See Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). The availability of collateral estoppel is an issue of law that we review de novo. See, e.g., Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir.2000).

### B. Collateral Estoppel

#### 1. Collateral Estoppel is Available to the Insurers

We must first address the threshold question that Stites raised in his reply brief-whether a party other than the United States may take advantage of offensive collateral estoppel in a civil RICO case. We answer this question affirmatively.

Title 18 U.S.C. § 1964(d) provides that: "[a] final judgment or decree rendered in favor of the United States in any criminal [RICO] proceeding ... shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding *brought by the United States.*" (emphasis added). Stites argues that because the statute does not

explicitly state that offensive collateral estoppel is available to private citizens, it necessarily implies that such parties cannot use it. We reject his contention.

While the issue is one of first impression in the Ninth Circuit, several district courts have addressed, and rejected, identical arguments. See County of Cook v. Lynch, 560 F.Supp. 136, 138–40 (N.D.Ill.1982); Anderson v. Janovich, 543 F.Supp. 1124, 1128–30 (W.D.Wash.1982); State Farm Fire and Casualty Co. v. Estate of Caton, 540 F.Supp. 673, 682 (N.D.Ind.1982), overruled on other grounds, Ashland Oil, Inc. v. Arnett, 656 F.Supp. 950, 953 (N.D.Ind. 1987). The district court in Anderson observed that: "[c]ollateral estoppel is without a doubt a civil remedy of historical standing.... [T]he abrogation of a traditional remedy such as collateral estoppel requires a clearer expression that mere silence." Anderson, 543 F.Supp. at 1128–29. In addition, when RICO was enacted in 1970, federal common law did not allow for offensive non-mutual collateral estoppel. See County of Cook, 560 F.Supp. at 139. Such estoppel was only authorized in 1979, when the Supreme Court decided Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The court in Cook observed that it was unlikely that Congress intended "to deny a remedy against RICO violators which the federal common law, as it has developed since RICO's enactment, would otherwise provide." Cook, 560 F.Supp. at 139.

We find these cases persuasive, and adopt their reasoning. We doubt that Congress intended affirmatively to deny offensive non-mutual collateral estoppel to private plaintiffs seeking to recover losses caused by RICO enterprises. The most likely explanation for the lack of an explicit statement permitting private parties to use such estoppel is simply that it was unavailable when RICO was enacted. We

conclude that the Insurers may take advantage of offensive non-mutual collateral estoppel in making their case against Stites.

### 2. Collateral Estoppel and RICO Generally

We now examine whether the district court properly applied collateral estoppel to preclude Stites from relitigating issues that had been decided against him in his criminal trial. We conclude that it did.

■ As the district court noted, there are four elements in a criminal RICO case. To obtain a conviction, the government must prove that the defendant engaged in: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *See* 18 U.S.C.1962; *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987). To prevail on a civil RICO claim, a plaintiff must prove all of these elements, and, in addition, show that the defendant caused injury to his business or property. 18 U.S.C. § 1964(c). This fifth element includes two related components. First, a civil RICO plaintiff must show that his injury was proximately caused by the fraudulent conduct. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *aff'd. on other grounds, Humana, Inc. v. Forsyth*, 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999). Second, the plaintiff must show that he has suffered a concrete financial loss by documenting the amount of damages to which he is entitled. *Id.*

■ The district court properly concluded that Stites could be estopped from contesting the first four of the five elements necessary to a civil RICO claim. *See* 18 U.S.C. § 1964(c). The policy considerations discussed by the Supreme Court in *Parklane Hosiery* all cut in favor of applying offensive non-mutual collateral estoppel in this case. First, the Insurers could not have joined the criminal case. *See*

*Parklane Hosiery*, 439 U.S. at 331–32, 99 S.Ct. 645. Second, because Stites faced a lengthy prison sentence, he had an incentive to litigate vigorously in his criminal trial. Third, the Insurers' civil suit was not only foreseeable, but had already been filed. Fourth, there are no inconsistent judgments concluding that Stites was not guilty of a criminal RICO violation. *See id.* at 332, 99 S.Ct. 645. Finally, the facts necessary to establish a criminal RICO violation were submitted to a jury, which found Stites guilty beyond a reasonable doubt. *See id.* at 351, 99 S.Ct. 645 (Rehnquist, J., dissenting).

Moreover, the criminal case also established that Stites and other members of the Alliance churned the very lawsuits for which the Insurers now seek damages. In this case, then, the guilty verdicts establish that Stites caused the Insurers' injury. Stites was found guilty of various predicate acts of mail fraud in connection with each of the lawsuits or groups of lawsuits for which the Insurers seek damages. Because a conviction for mail fraud under 18 U.S.C. § 1341 requires that the government prove the existence of a "scheme to defraud," those convictions prove that Stites's RICO scheme extended to those lawsuits. In any event, Stites does not argue that the Insurers were not injured by his RICO enterprise in a general sense; he only disputes that certain lawyers' fees were improperly included in the damages award. We now turn to that argument.

### 3. Whether Stites Can Be Liable For Fees Attributable to Arnold, Dezes, and Caiafa

■ Stites contends that the district court erred by concluding that he could be held liable for fees paid to the two attorneys who were acquitted of the criminal RICO and mail fraud charges, and the one attorney who died before trial. The es-

sence of this argument is that Stites cannot be held liable for fees paid to individuals who were never proved to be connected to the Alliance, and that his own convictions say nothing about whether individual defendants were conclusively found to be Alliance members.

We reject this contention for several reasons. First, it is irrelevant that Dezes and Caiafa were acquitted, and that Arnold was never tried and thus never proven guilty himself. As we have held, a failure to prove a fact beyond a reasonable doubt does not mean that it cannot be proven by a preponderance of the evidence. *See Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir.1988). The acquittals of Caiafa and Dezes would not be admissible evidence if offered to invite a negative inference that an event did *not* occur simply because the prosecution had not been able to show beyond a reasonable doubt that it did. *See id.* at 1387–88. The acquittals of Dezes and Caiafa mean nothing; what matters is what was conclusively proved against Stites at his criminal trial.

Stites's claim also fails as a factual matter. We assume for the purposes of this appeal that the Insurers had to prove that each attorney whose fees they sought to recover was actually a member of the Alliance.[1] Because Stites does not argue that the Insurers' proof was deficient with regard to any attorney other than Caiafa, Dezes, and Arnold, we limit our discussion to those individuals.

A comparison of the indictment to the verdict form in Stites's criminal case indicates that he was found guilty of multiple predicate acts of mail fraud that involved mailings to or from Caiafa, Dezes, and Arnold. The district court relied on these convictions in rejecting Stites's argument that he could not be liable for fees attributable to acquitted defendants:

> [D]efendant was convicted of numerous predicate acts of mail fraud for mailings that he neither sent nor received, but that were sent or received by ... Caiafa [and] Dezes, ... the individuals who were subsequently acquitted. Thus the [plaintiff] has met its burden of demonstrating proof by a preponderance of evidence that these individuals were members of the Alliance, and defendant has failed to come forth with evidence demonstrating a genuine issue as to whether in fact these individuals were members of the Alliance. Consequently, plaintiffs are entitled to fees paid to these individuals.

The same reasoning disposes of the claim that Arnold was not connected to the Alliance.[2]

Although Stites assumes that the district court applied collateral estoppel in determining that he could be liable for the fees of Caiafa, Dezes, and Arnold, the district court actually relied on traditional summary judgment principles in rejecting his claims: "[T]he plaintiff has met its burden of demonstrating proof by preponderance of the evidence that [Caiafa and Dezes] were members of the Alliance, and defendant has failed to come forth with evidence demonstrating a genuine issue of material

---

1. This proposition, however, is far from clear. The Insurers correctly point out that they may recover all damages proximately caused by Stites's RICO violations. *See, e.g., Forsyth*, 114 F.3d at 1481. Arguably, once it was established that Stites had churned a lawsuit, the Insurers could recover all costs incurred in the litigation, and not just fees paid to various attorneys connected with the Alliance. However, we leave resolution of this issue to a later date.

2. We note parenthetically that Stites did not raise this argument in the district court. Thus, we are not required to address his claim regarding Arnold. We do so only out of an abundance of caution.

fact as to whether these individuals were members of the Alliance." We think that this approach was reasonable, and agree that Stites has presented no countervailing evidence that Caiafa, Dezes, and Arnold were *not* connected to the Alliance. As discussed above, the acquittals are irrelevant, and do not raise a genuine issue of material fact. Summary judgment in favor of the Insurers was therefore appropriate.

### 4. Stites's Remaining Collateral Estoppel Arguments Fail

██ Stites's numerous remaining arguments challenging the district court's use of collateral estoppel lack merit. First, the record citations Stites provides do not support his assertion that the Insurers received damages for cases for which he was not indicted and convicted, and we have found nothing else that would support this claim. Second, it is irrelevant that common law fraud must be proved by clear and convincing evidence, as we have held that a civil RICO plaintiff must prove his case only by a preponderance of the evidence. *See Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 531–32 (9th Cir.1987). At any rate, Stites was proved guilty of a criminal RICO violation beyond a reasonable doubt, and the Insurers could thus take advantage of collateral estoppel even if they had to prove their claims by clear and convincing evidence. Third, Stites's argument that the Insurers cannot prove that he caused their damages because the acts of mail fraud for which he was convicted did not involve billing statements ignores his conviction under RICO for churning litigation. Finally, the argument that it is inappropriate to award both punitive damages and treble damages under RICO is inapposite because only treble damages were awarded in this case.

### C. Evidentiary Arguments

██ Stites also raises a number of evidentiary challenges to the documents submitted by the Insurers to prove their damages. A district judge's determination that particular evidence is or is not admissible is reviewed for an abuse of discretion. *See, e.g., Defenders of Wildlife v. Bernal*, 204 F.3d 920, 927 (9th Cir.2000). First, although the district court initially denied the Insurers' summary judgment motion as to damages in part because some documents were illegible, when they submitted their renewed motion, the court specifically found that all the checks submitted were legible. This determination was not an abuse of discretion. Second, Stites never argued in the district court that there is no proof that the checks were actually cashed, and he has therefore waived that argument.

██ We also reject Stites's hearsay and best evidence objections to the Insurers' evidence. The Insurers submitted detailed affidavits from employees who had worked for them at the time the fraudulent attorneys' fees had been paid; these employees described in detail the procedures by which bills submitted by defense attorneys were processed and paid. The records submitted by the Insurers thus fell well within the business records exception to the hearsay rule. Fed.R.Evid. 803(6). Finally, the "best evidence" rule embodied in Rule 1002 is inapposite, because the checks and billing records the Insurers submitted were not offered to prove "the content of a writing" as required by the rule.

### D. Effect of Stites's Default

██ Stites finally argues that the district court's summary judgment decisions were fatally flawed because he had been in default since 1991 for failure to pay attorneys' fees incurred as discovery sanctions.

In 1993, Judge Rudi Brewster, who was then in charge of the case, agreed to set the default aside if Stites paid these fees. Stites, apparently, has never paid, and has theoretically remained in default. Since 1993, both Stites and the Insurers have changed lawyers, a different judge has taken over, and the case has proceeded as if the default did not exist.

■ The gist of Stites's argument as to why his default warrants a remand is that defaulted parties may not oppose the other party's motions, and that therefore the district court denied him due process by granting motions that he was theoretically barred from opposing. However, Stites fully participated in the summary judgment proceedings, and was not barred from submitting motions opposing those of the Insurers. The district judge granted him extensions of time to file his motions, and even considered the substantive arguments in his belated opposition to the plaintiffs' motion for summary judgment. Stites's assertion that he was denied due process is thus wildly inaccurate. As the district judge noted, "[a] defaulted party's rights are not violated when a case proceeds on the merits rather than by means of a default judgment where the party is, as here, given full opportunity to litigate the case on the merits."

**AFFIRMED.**